Ronald R. McMillin, R. Max Humphreys, Jefferson City, for relator.

Michael W. Manners, Independence, for respondent.

**STATE ex rel. CASS MEDICAL CENTER, Relator,**

v.

**Honorable Donald L. MASON, Judge, Circuit Court, Jackson County, Respondent.**

**No. 72563.**

Supreme Court of Missouri, En Banc.

Oct. 16, 1990.

HIGGINS, Judge.

Cass Medical Center, Inc., a hospital organized under sections 205.160–205.379, RSMo 1986, and owned by Cass County, Missouri, seeks to prohibit Judge Mason from proceeding to trial on an underlying negligence claim against the Center in *Herschel Young, plaintiff, v. Lee V. Ludwig, M.D., et al., defendants,* CV88–16942 in the Circuit Court of Jackson County, Missouri. This Court issued a preliminary writ of prohibition; that ruling is now made absolute.

This proceeding arises from the institution of medical malpractice and wrongful death claims against seven health care providers. Plaintiff Herschel Young's second amended petition, filed on August 16, 1989, prays damages for the death of his wife, which occurred September 25, 1986; Count IV charged the Center with medical negligence in the death of his wife.

On September 2, 1989, the Center filed its *motion for summary judgment* maintaining that as a county hospital organized pursuant to sections 205.160–205.379, it is immune "not only ... from judgment but also ... from suit," *State ex rel. Missouri Department of Agriculture v. McHenry,* 687 S.W.2d 178, 181 (Mo. banc 1985); *State ex rel. Barthelette v. Sanders,* 756 S.W.2d

*Rule 5,* effective July 1, 1991. See *Rule 5.26(a)(4).*

536, 539 (Mo. banc 1988), under the prescript of sovereign immunity. Judge Mason denied the Center's motion for summary judgment; the Court of Appeals, Western District, denied the Center's petition for a writ prohibiting Judge Mason from exercising jurisdiction over the Center.

The Center purchased a Hospital Professional Liability Insurance policy. Policy number GLA 09692 covered the period from September 1, 1985, to September 1, 1986; policy number GLA 09757 covered the period from September 1, 1986, to September 1, 1987. Both policies carried the same endorsement, Endorsement Number 7 and Endorsement Number 8, respectively, to confine the coverage provided by the policies to: (1) claims attributed to a dangerous condition of the Center's property; (2) claims attributed to a Center's agent's operation of a motor vehicle within the course of the agent's employment; and, (3) claims attributed to Center employees who are not covered by official immunity (nurses, technicians, interns, and nurses' aides).

Section 537.600.1(1) and (2), RSMo 1986, state that the doctrine of sovereign immunity is "in full force and effect" and waive sovereign immunity for injuries resulting from the operation of motor vehicles and the condition of an entity's property. Neither situation emerges in this case. Section 537.600.2, RSMo 1986, provides:

The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.

Section 537.610.1, RSMo 1986, states:

The commissioner of administration, through the purchasing division, and the governing body of each political subdivision of this state ... may purchase liability insurance for tort claims made against the state or the political subdivision, but the maximum amount of such coverage shall not exceed eight hundred

thousand dollars for all claims arising out of a single occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence ... and no amount in excess of the above limits shall be awarded or settled upon. Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section....

The legislature enacted section 537.600.1 in response to *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), which abrogated the common law doctrine of sovereign immunity for tort claims in Missouri. In *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864 (Mo. banc 1983), this Court held that *Jones* was no longer the law because:

Section 537.600 states that the doctrine of sovereign immunity as it existed at common law in Missouri ... remains in full force and effect. Prior to that date, sovereign immunity was the rule, not the exception, and it must be inferred from the words and the structure of this statutory pronouncement that the legislature intended to reenact sovereign immunity as the rule: for the proposition begins and ends with the independent clause stating that sovereign immunity is in full force and effect. The conclusion reached is that the legislative intent was not to carve out legislative exceptions to what under *Jones* became a judicial abrogation of sovereign immunity, but was, rather, to overrule *Jones* and to carve out limited exceptions to a general rule of immunity.

*Id.* at 868. This Court continued its countenance of this general rule of immunity, *Findley v. City of Kansas City*, 782 S.W.2d 393, 395 (Mo. banc 1990), and the application of governmental immunity to a suit against a county hospital for medical negligence is not an open question. *Gavan v. Madison Memorial Hospital*, 700 S.W.2d 124, 127 (Mo.App.1985).

The Center contends that sections 537.-600.1(1) and (2) and 537.610.1, read together, proclaim that immunity does not exist for county hospitals when the claim results from a dangerous condition of property or the operation of motor vehicles and that a county hospital may purchase insurance, but if the insurance limits are more than the amount set in section 537.610.1, sovereign immunity still protects the hospital from any liability above those amounts. The Center also maintains it had no liability insurance covering negligence suits against the entity itself, and the applicability of sovereign immunity pursuant to section 537.600 is not dependent on the presence or absence of insurance. Respondent submits that the Center's motion for summary judgment was denied because it had purchased liability insurance; hence, the presence of insurance waived sovereign immunity pursuant to section 537.610.1. Respondent argues that the Center's theory that the insurance policy does not cover matters barred by sovereign immunity and that this case is barred by sovereign immunity because the policy did not cover this negligence claim is a "neat circle" but "the logic ... is lacking."

Whether respondent should have granted the Center's motion for summary judgment depends on whether there was a waiver of sovereign immunity under section 537.610.-1. The answer to that question lies in whether Young's medical negligence claim falls under "the purposes covered by [the] policy of insurance." A plain reading of the policy's language reveals the Center did not purchase coverage for medical negligence by the Center. Rather, the Center's "specimen policy" clearly states under "Coverage O" that "[t]he Company will pay ... all sums which the insured shall become legally obligated to pay as damages...." Under the attached endorsement, in consideration for a reduction in the premium charged (a 25% reduction according to counsel), coverage is confined to claims arising out of the three previously mentioned classes of events (dangerous property conditions, motor vehicle accidents, and negligent acts by employees not covered by official immunity), assuming the Center becomes "legally obligated" for any such claims.

The insurance contract in this case, the specimen policy and its bargained-for endorsement, never promised coverage of the kind of claim made by Young. The Center was never "legally obligated to pay" because its liability falls under the sovereign immunity of section 537.600.1. Because Young's negligence claim does not fall under "the purposes covered by [the] policy of insurance," no coverage exists under this policy for the claim and no waiver of sovereign immunity exists under the language of section 537.610.1.

Statutory provisions that waive sovereign immunity must be strictly construed. *Bartley*, 649 S.W.2d at 868. Respondent would have this Court read into the 1985 amendment of section 537.600, which added subsection 2 to that section (the absolute waiver of sovereign immunity in property condition and motor vehicle cases), a legislative design to cause a waiver of sovereign immunity by an entity's purchase of liability insurance for torts other than those specifically enumerated in section 537.600.-1. Respondent argues that, under section 537.610.1, the Center's purchase of any liability insurance waives sovereign immunity for all claims, citing *Monroe County v. Rouse*, 274 S.W.2d 477 (Ky.1954); *Beach v. City of Springfield*, 32 Ill.App.2d 256, 177 N.E.2d 436 (1961); and *Collins v. Memorial Hospital of Sheridan County*, 521 P.2d 1339 (Wy.1974). Unlike the present case, those cases all dealt with a liability-creating event that was covered by the insurance policy at issue. Respondent's argument slights Missouri authority to the contrary, *Gabbett v. Pike County Memorial Hospital*, 675 S.W.2d 950 (Mo.App.1984); *Bartley*, 649 S.W.2d 864, and the plain language of section 537.610.1 ("[s]overeign immunity ... is waived only to the maximum amount of and only for the purposes covered by [the] policy of insurance"). Respondent's insistence that the Center's reading of sections 537.600 and 537.610 requires that sovereign immunity may be waived only in property condition cases and motor vehicle cases flies in the face of the latter

section's plain language. Section 537.610 provides an independent basis for waiving sovereign immunity—a basis cemented in the existence of coverage for the damage or injury at issue under the language of the insurance policy.

A reading of these two sections to mandate a waiver of sovereign immunity by an entity's purchase of any liability insurance would border on the unusual. If such a reading were to be made, government entities would be forced to choose between purchasing insurance and waiving sovereign immunity for all claims on the one hand or not purchasing insurance and being immune except for claims relating to dangerous conditions of property or the operation of motor vehicles on the other, a "catch–22" situation and frustration of legislative intent.

As in *State ex rel. New Liberty v. Pratt,* 687 S.W.2d 184 (Mo. banc 1985), the remedy of prohibition is appropriate in this case to maintain the Center's immunity and to avoid "patently unwarranted and expensive litigation, inconvenience and waste of time and talent." *Id.* at 187. In this case, the unambiguous, circumscribed, insurance coverage of claims outside the protection of sovereign immunity created no waiver of the Center's immunity. Accordingly, the preliminary rule in prohibition is made absolute.

BLACKMAR, C.J., and ROBERTSON, COVINGTON, BILLINGS and HOLSTEIN, JJ., concur.

RENDLEN, J., dissents.