STATE of Missouri, Respondent,

v.

Cornealious M. ANDERSON, Appellant.

No. SC 84035.

Supreme Court of Missouri,
En Banc.

May 28, 2002.

Alan G. Kimbrell, Chesterfield, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Respondent.

DUANE BENTON, Judge.

Cornealious M. Anderson was convicted of robbery in the first degree and armed criminal action, and sentenced to consecutive terms of ten and three years, respectively. He argues that the circuit court erred in admitting a "Beretta magazine brochure for semi-automatic handguns." After opinion by the Court of Appeals, this Court granted transfer. *Mo. Const. art. V, sec. 10.* Affirmed.

## I.

Defendant and his step-brother robbed the victim as he was making a night deposit. The victim testified that he was robbed by two men, both with guns—"the kind where the clip goes in the handle." A police officer later testified that in his initial statement to police, the victim indicated that one of the perpetrators had a handgun. No gun was ever recovered.

Although called a "brochure" by the parties, the exhibit is actually one letter-sized (8.5″ × 11″), glossy advertisement of Beretta semi-automatic pistols—with 7 on one side, and 11 on the reverse. The issues are whether the brochure should have been admitted, and if not, whether its admission was so prejudicial that it deprived Defendant of a fair trial.

## II.

The trial court's admission of evidence is not disturbed, absent an abuse of discretion. *State v. Simmons,* 955 S.W.2d 729, 737 (Mo. banc 1997).

Admissibility requires relevance. The general rule in Missouri is that relevance is two-tier: logical and legal. *State v. Smith,* 32 S.W.3d 532, 546 (Mo. banc 2000); *State v. Sladek,* 835 S.W.2d 308, 314 (Mo. banc 1992) (Thomas, J., concurring). Evidence is logically relevant if it tends to make the existence of a material fact more or less probable. *Smith,* 32 S.W.3d at 546. Logically relevant evidence is admissible only if legally relevant. Legal relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Sladek,* 835 S.W.2d at 314. Thus, logically relevant evidence is excluded if its costs outweigh its benefits.

Here, Defendant's possession of the brochure tends to make more probable that he was familiar with a handgun like that described by the victim. This connec-

tion is tenuous, but logical relevance has a very low threshold. *Id.*

■ Defendant objects that this finding of logical relevance is an inference on an inference, which is impermissible. See *State v. Ring*, 346 Mo. 290, 141 S.W.2d 57, 64–65 (banc 1940). The brochure need not address the ultimate fact that Defendant used a handgun (with a clip) to commit the robbery, but rather may make more probable that Defendant is familiar with such a gun. See *New Jersey v. Koskovich*, 168 N.J. 448, 776 A.2d 144, 162–63 (2001) (gun-magazine covers corroborate defendant's familiarity with guns). Thus, the brochure is logically relevant to a material fact.

■ Because the brochure has logical relevance, its legal relevance—probative value *versus* costs—must be determined. The brochure's probative value is minimal. The victim described only the manner of loading the gun. This description is so general that it includes many other hand-guns, besides Berettas.

The first type of cost of evidence is "unfair prejudice." *Sladek*, 835 S.W.2d at 314. This Court has long identified the unfair prejudice of introducing weapons not connected to the defendant or the crime. *State v. Wynne*, 353 Mo. 276, 182 S.W.2d 294, 299–300 (1944). "First, there is a natural tendency to infer from the mere production of any material object, and without further evidence, the truth of all that is predicated of it. Secondly, the sight of deadly weapons or of cruel injuries tends to overwhelm reason and to associate the accused with the atrocity without sufficient evidence." *Id.*

Although the brochure is not as over-whelming to the jury as introduction of a gun itself, it risks similar (but lesser) unfair prejudice. Compared to its minimal probative value, the brochure unfairly prejudiced Defendant. The trial court erred in admitting the Beretta brochure because it was not legally relevant.

## III.

■ In matters involving the admission of evidence, this Court "reviews for preju-dice, not mere error, and will reverse only if the error was so prejudicial that it de-prived the defendant of a fair trial." See, e.g., *State v. Johns*, 34 S.W.3d 93, 103 (Mo. banc 2000), *cert. denied*, 532 U.S. 1012, 121 S.Ct. 1745, 149 L.Ed.2d 668 (2001).

■ Although the brochure was im-properly admitted, it did not deprive Defendant of a fair trial. Defendant ad-mitted guilt to the police and at trial, confessing to participating in the rob-bery. Defendant testified that his step-brother had a "BB pistol," but denied having a gun himself.

The brochure was inconsequential at tri-al. It was admitted, during a detective's testimony, over Defendant's objection. The detective found the brochure—with various other papers—in the apartment where Defendant lived on the day of the robbery (although he had moved before the search occurred). When admitted, the brochure was mentioned only once, in six words, as part of a package of papers.

Later, during cross-examination of the Defendant, the State asked about the bro-chure, immediately after questions about the BB gun. Defendant testified that the brochure was in his apartment, but be-longed to his neighbor who got it at a gun show. He acknowledged it depicted Be-rettas, but stated he was not familiar with them. He further testified that he never went to a gun show.

Other than the seven questions of De-fendant and the brief identification by the detective, there was no reference at trial to the brochure. Defendant did not include the opening statements and closing argu-

ments in the record, which apparently did not mention the brochure. On this record, the admission of the brochure did not deprive Defendant of a fair trial.

Defendant cites cases where this Court reversed convictions due to admission of weapons wholly unconnected to the offense or the offender. See *Wynne,* 182 S.W.2d at 298–300; *State v. Richards,* 334 Mo. 485, 67 S.W.2d 58, 61 (1933); *State v. Krebs,* 341 Mo. 58, 106 S.W.2d 428, 429 (1937); *State v. Smith,* 357 Mo. 467, 209 S.W.2d 138, 141–43 (1948); *State v. Holbert,* 416 S.W.2d 129, 132–33 (Mo.1967); *State v. Baker,* 434 S.W.2d 583, 587 (Mo. 1968); *State v. Merritt,* 460 S.W.2d 591, 595–96 (Mo.1970). The incidental references in this case to a one-page brochure are not nearly as prejudicial as the display of a weapon itself.

## IV.

The judgment is affirmed.

LIMBAUGH, C.J, and PRICE, J., concur.

KENNETH W. SHRUM, Sp. J., concurs in separate opinion filed.

WOLFF, J., concurs in part and dissents in part, in separate opinion filed. WHITE and LAURA DENVIR STITH, JJ., concur in separate opinion of WOLFF, J.

RICHARD B. TEITELMAN, J. not participating.

KENNETH W. SHRUM, Special Judge, concurring.

I concur in the principal opinion in all respects, including its analysis and holding. For the reasons stated there, I agree it was error to admit the gun brochure, but also agree that its admission did not deprive Defendant of a fair trial.

I write separately to express my disaffection for the phrase "unfair prejudice." Previous usage of this phrase by this Court, its presence in *Mo. Evidence Restated,* and its inclusion in FED. R. Evid. 403, do not alter my view that it is a confusing, meaningless phrase offering no help or guidance to trial judges, appellate courts, or anyone else in weighing the "cost" of evidence.

MICHAEL A. WOLFF, Judge, Concurring in Part and Dissenting in Part.

I concur that the trial court erred in admitting the Beretta gun brochure into evidence, but dissent from the conclusion that the evidentiary error, properly preserved for review, was not prejudicial.

When determining legal relevancy, the principal opinion finds that the prejudicial effect of admitting the gun brochure outweighs its probative value. I agree with the majority's analysis up to this point. Because it does not matter whether the gun used was real, I also concur with the majority with respect to the first degree robbery conviction.

As to the armed criminal action, however, the principal opinion ignores a critical point. The error was preserved by proper objection and where error is preserved, the error is presumed to be prejudicial and the state bears the burden of showing the error to be harmless. *State v. Taylor,* 739 S.W.2d 220, 223–24 (Mo.App.1987); *State v. Miller,* 650 S.W.2d 619, 621 (Mo. banc 1983); *State v. Rhodes,* 988 S.W.2d 521, 529 (Mo. banc 1999); *Burton v. State,* 641 S.W.2d 95, 99 (Mo. banc 1982); *State v. Grant,* 784 S.W.2d 831, 834 (Mo.App.1990). The standard for the state varies in the case law from showing beyond a reasonable doubt that the error was harmless,[1] to

---

1. *State v. Taylor,* 739 S.W.2d 220 (Mo.App. 1987); *State v. Miller,* 650 S.W.2d 619 (Mo.

presuming prejudice unless the error is "harmless ... without question." [2]

Regardless of how the standard is described, the primary method to show harmless error is to show that the result, without the erroneous evidence, would have been the same because evidence of guilt was overwhelming. *State v. Ford,* 639 S.W.2d 573, 576 (Mo. banc 1982); *State v. Sykes,* 628 S.W.2d 653, 657 (Mo. banc 1982); *State v. Degraffenreid,* 477 S.W.2d 57, 65 (Mo. banc 1972), *State v. Rush,* 949 S.W.2d 251, 256 (Mo.App.1997); *State v. Davidson,* 947 S.W.2d 87, 89 (Mo.App. 1997). Or, as other cases hold, the presumption of prejudice is rebuttable by facts and circumstances of the particular case. *Burton,* 641 S.W.2d at 99; *Grant,* 784 S.W.2d at 834; *State v. Walker,* 484 S.W.2d 284, 286 (Mo. banc 1972); *Ford,* 639 S.W.2d. at 575.

Other than the improperly admitted gun brochure, the only evidence that a real gun was used in committing the crime was the testimony of the victim. The victim testified that the gun was of the type where the clip goes into the handle. No gun was ever recovered.

The evidence of the use of a gun was not strong and was far from overwhelming. *State v. Richardson,* 923 S.W.2d 301, 311 (Mo. banc 1996). The admission of the gun brochure, while brief in duration, seems crucial to the state's case. The state's purpose was not, contrary to the principal opinion's assumption, simply to show Anderson's familiarity with this kind of gun.[3] The gun brochure was offered and received in the state's case, before Anderson testified, and thus was not offered to rebut testimony that he was unfamiliar with that type of gun.

Most tellingly, the state's brief submitted in this case argues that the evidence helped to prove that Anderson was guilty of first degree robbery and armed criminal action because "the guns depicted in the brochure were similar to the guns the victim described at trial ...." Moreover, the state argues here that the gun brochure "corroborated the victim's testimony that both [Anderson] and his step-brother carried guns during the robbery and it impeached [Anderson's] post-arrest statement that only his stepbrother had a gun ...."

According to the jury instructions, in order to find Anderson guilty of first degree robbery and armed criminal action, the jury did not need to find that Anderson himself possessed a weapon. The stepbrother's possession would have been sufficient. The instruction for first degree robbery requires, at a minimum, that Anderson's stepbrother "displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument." To convict Anderson of robbery the jury did not have to find that the gun used was a *real* gun. By contrast, the instruction for armed criminal action requires the use of a deadly weapon or dangerous instrument.[4] It is unclear whether

banc 1983).

**2.** *State v. Degraffenreid,* 477 S.W.2d 57, 64 (Mo. banc.1972).

**3.** The majority opinion cites *New Jersey v. Koskovich,* a case where a state Supreme Court determined that gun magazines found in the defendants bedroom were admissible to show familiarity with guns. 168 N.J. 448, 776 A.2d 144, 162–63 (2001). In that case the

defendant was not denying that he used a gun to commit the felony but was claiming that the gun fired accidentally. The evidence was relevant to show defendant's shooting of the victim was purposeful and knowing because he was experienced and proficient with weapons. *Id.* at 163.

**4.** "Dangerous instrument means any instrument, article, or substance, which, under the circumstances in which it is used, is readily

the jury decided the issue by concluding that a BB gun is a dangerous instrument or by deciding that Anderson or his step-brother used a gun of the kind pictured in the brochure.

The brochure is the only corroboration of the state's understandably weak evidence. It is not at all cumulative and cannot be treated as harmless.[5] Without the gun brochure, the evidence supporting armed criminal action is neither strong nor overwhelming.[6]

The record shows that the reason the state offered the gun brochure is to convict Anderson of armed criminal action and to help convict him of first degree robbery—as opposed to second-degree robbery. The state's improper evidence appears to have had its intended effect. There is no way to discern the actual reasoning of the jury. In these circumstances, the doubt weighs against the state, which has the burden of overcoming the presumption of prejudice. Anderson's admission that his stepbrother had a BB gun may eliminate the prejudice as to the armed robbery conviction, but not as to armed criminal action.

The state has not overcome the presumption of prejudice, and I therefore dissent. The trial court's judgment as to armed criminal action should be reversed and the case remanded for a new trial.

capable of causing death or other serious physical injury." *Jury Instruction No. 10.*

**5.** *State v. Hanway,* 973 S.W.2d 892, 897 (Mo. App.1998).

**6.** *See State v. Ford,* 639 S.W.2d 573 (Mo. banc 1982); *State v. Sykes,* 628 S.W.2d 653 (Mo. banc 1982); *State v. Degraffenreid,* 477 S.W.2d 57, 65 (Mo. banc 1972), *State v. Rush,* 949 S.W.2d 251 (Mo.App.1997); *State v. Davidson,* 947 S.W.2d 87 (Mo.App.1997).